# NORTHWESTERN HOSPITAL OF MINNEAPOLIS v. PUBLIC BUILDING SERVICE EMPLOYES' UNION LOCAL NO. 113 AND OTHERS.[1]

October 11, 1940.

No. 32,668.

[1]Reported in 294 N. W. 215.

*Charles F. Noonan* and *Ralph H. Comaford,* for appellant.
*Leonard, Street & Deinard* and *Hyman Edelman,* for respondents.

HILTON, JUSTICE.

Appellant has presented this controversy by an appeal from an order dismissing and quashing a temporary restraining order.

Plaintiff-appellant is a nonprofit, charitable corporation operating a public hospital in Minneapolis. Irrespective of nationality, race, or creed, the hospital opens its doors to those seeking medical or surgical treatment. Recent years have brought a daily average of 158 patients to the hospital. For income it is dependent upon patients able to pay and upon charitable contributions. Many obtaining service from the hospital cannot pay, and, according to plaintiff, were it not for contributions these indigent could not be aided. The financial statement shows that there was a deficit for the years 1930 to 1934, inclusive. A balance averaging about $10,000 yearly existed between 1935 and December, 1938. Operation of the hospital requires about 125 maintenance and nonprofessional employes consisting of janitors, laundrymen, firemen, elevator operators, and others in similar occupations.

In 1937 some of the employes were organized and joined Public Building Service Employes' Union, Local No. 113. Thereafter the union sought recognition as the bargaining agent of the employes and efforts were expended to induce the hospital to enter into an agreement relating to wages, hours, promotions, and vacations. Plaintiff refused to nego-

tiate and took the view that its functions concerned a service to mankind which could not be disrupted under any circumstances. Emphasis as well was attached to the public, charitable, and nonprofit attributes.

In February, 1940, a "bannering" and picketing campaign was instituted to inform the public that "this hospital refuses to deal collectively with the union of its employes." From this activity sprang the application for a temporary restraining order. Granted on *ex parte* motion, the order restrained picketing and "bannering" at the hospital. From the complaint it is evident that plaintiff charged that such acts caused unrest among its employes within the hospital and generated nervousness among patients, who, according to the complaint, thought that the windows would be smashed, the heat and light turned off, and their friends and relatives prevented from coming to see them. The hospital alleged that many inferred from the picketing that a strike was actually in progress.

May, 1939, brought notice from the union that the matter was being turned over to the state labor conciliator. In addition, plaintiff was informed that unless a satisfactory settlement were achieved a vote to strike would be taken on June 12.

Pursuant to 3 Mason Minn. St. 1940 Supp. § 4254-27, the state labor conciliator notified the governor that the dispute was one involving the public interest. A commission representing labor, employers, and the public was appointed. Its report in June, 1939, concluded that the hospital was subject to the labor relations act. The state labor conciliator, after being so advised by the attorney general, likewise concluded that the act was applicable. On June 24, 1940, the district court quashed the temporary order, and plaintiff appealed from this.

If exemption from the operation of the act exists in plaintiff's favor, error exists in the order here for review.

The logical starting point for an examination is with the definitions of employer and employe in the labor relations act. 3 Mason Minn. St. 1940 Supp. § 4254-21, provides:

"(b) 'Employer' includes all persons employing others * * * but does not include the state or any political or governmental subdivision thereof, nor any person subject to the Federal Railway Labor Act, * * *

"(c) 'Employee' includes, in addition to the accepted definition of the word, any employee, whose work has ceased because of any unfair labor practice * * * but does not include any individual employed in agricultural labor or by his parent or spouse or in domestic service of any person at his own home."

There cannot be doubt that both definitions are comprehensive in substantive nature, in fact so much so that they force the conclusion that a nonprofit, charitable corporation operating a hospital is within the act as one "employing others." Equally certain is the proposition that one employed as an elevator operator, as a janitor, or in a similar occupation is an "employe" within the accepted meaning of that term. Black, Law Dictionary (3 ed.) p. 657, defines employe as follows:

"One who works for an employer; a person working for salary or wages; applied to anyone so working, but usually only to clerks, workmen, laborers, etc."

To be noted is that the statute contains certain specific exemptions. There is no express exemption of charitable hospitals or of their employes. Can it be said that the exclusionary clause relating to the state or its political subdivisions includes plaintiff? Other courts considering a similar provision have stressed the exemption in favor of the state and have included among other grounds for decision the particular hospitals involved within such exclusion. Jewish Hospital of Brooklyn v. Doe, 252 App. Div. 581, 300 N. Y. S. 1111; Western Penn. Hospitals v. Lichliter, 49

Dauph. Co. Rep. (Pa.) 326. However, in the New York case the hospital received substantial aid from the city and accepted its patients. In the Pennsylvania case most of the hospitals were recipients of state funds. It was in light of these facts that the decisions were rendered. Concededly the state would be compelled to perform the function now undertaken by such hospitals as plaintiff were they to cease operation. Nevertheless we do not think that this relationship between the hospitals and the state is sufficient to classify the former in the exemption granted the latter. Since the legislature specified certain exemptions, the most practical inference is that all intended were mentioned. Inasmuch as hospitals and hospital employes were not specifically excluded, they must be regarded as within the definitions.

Particular attention is demanded by § 4254-27, which reads:

"If the dispute is in any industry, business or institution affected with a public interest, which includes, but is not restricted to, any industry, business or institution engaged in supplying the necessities of life, safety, or health, so that a temporary suspension of its operation would endanger the life, safety, health or well being of a substantial number of people of any community, the provisions of section 6 shall apply and the labor conciliator shall also notify the Governor who may appoint a commission of three, to conduct a hearing and make a report * * *."

Several things must be noted about this provision. In addition to the inclusion of industry and business, institutions are specifically incorporated. Since a state institution is within the exemption of the act, we must understand this word to mean what is commonly conveyed by it. A hospital such as plaintiff corporation operates is generally regarded as an institution in the community. It is not a business or industry, but it is concerned with the well-being

of the people. The intention of the legislature is more evident when consideration is given to the provision relating to the suspension of activity being a peril to a substantial number of people. It seems very apparent that just such a situation as is now before us was contemplated by this statute. There is a clear recognition that hospitals are within the act. Certainly it is true, as pointed out in both of the previously cited decisions, that ordinarily labor legislation has been concerned principally with industrial labor relations. But to place such a restricted meaning upon the labor relations act would amount to judicial legislation instead of interpretation. The employer-employe problem is more far-reaching, and to impute to the legislature a purpose to provide means for the adjustment of labor relations in industry only would be artificial. We are all aware that thousands are performing duties as employes in hospitals such as plaintiff which are the same as those done by employes in private industry. The position and rights of employes in a hospital are as important to the well-being of the whole community as that of a technical industrial employe. The simple fact is that employes are dependent upon their positions for a livelihood. This is true whether the employer is a charitable hospital or an automobile manufacturer. The labor relations act does not make the right to bargain collectively dependent upon the nature of the employer's operation. For this reason, among others, the employers are given the right to bargain collectively, and in the assertion of this right they can confront the demands of labor with the particular problems and conditions arising from the undertaking in which they are engaged. Thus with a proper coöperative spirit, both sides are able to meet on a conciliatory ground determined after consideration of both parties' situation. Since the act is clear and unambiguous, there is nothing for us to construe. So definitely has the legislature indicated that a hospital such as plaintiff is within the labor relations act that we cannot hold it is contrary

to it to have a hospital subject to labor problems. While it is true as pointed out by plaintiff that the preamble of the labor relations act reads, "An act relating to the avoidance and settlement of labor disputes and the promotion of industrial peace," the fact is that the enactment itself goes beyond "industrial peace" but deals with "labor disputes" in institutions concerned with health and safety of a substantial number of people. In view of the clarity of the statute, little weight can be given the New York and Pennsylvania decisions. If plaintiff thinks that a change should be made in the law, its appeal should be directed to those who have the determining voice in the matter.

Examination of the so-called Anti-Injunction Act, 3 Mason Minn. St. 1940 Supp. § 4256, et seq. does not convince us that the conclusion here reached is incorrect. The declaration of public policy is in no way inconsistent. 3 Mason Minn. St. 1940 Supp. § 4260-2. In the New York and Pennsylvania decisions, hospital employes were not considered within the provision of statute comparable to § 4260-12(a), which reads:

"A case shall be held to involve or to grow out of a labor dispute when the case involves persons * * * engaged in the same industry trade, craft or occupation; * * *."

To be observed is the fact that our statute also reads:

"or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; * * *."

It seems self-evident that maintenance and nonprofessional employes are within the statute.

In passing there is need to comment upon the possibility of a strike at the hospital. Social consciousness causes one to appreciate that by accepting an employment in a hospital a person undertakes an obligation to the community as well as to his employer. Only as a coördinated unit can plaintiff

function. In many communities cessation of activity at a hospital removes all reasonable opportunity for hospitalization. It may be that a proper regard for community respect and support is sufficient to insure continued operation of a hospital as a unit even in face of the most trying difficulties. There is a distinct obligation on the part of both the hospital employers and employes to settle differences in absolute finality by submission to arbitration under the provisions of the labor relations act, § 4254-29. Surely a desire to avoid public condemnation is sufficient to induce resort to this procedure.

The order is affirmed.

STONE, JUSTICE (concurring).

I agree in the result and all that is said by Mr. Justice Hilton in support of it. I cannot agree in any implication there may be in this opinion or elsewhere that the maintenance and nonprofessional employes of a general hospital are not engaged in "industry" within the meaning of the applicable statutes.

