Wisconsin Employment Relations Board, Respondent, vs. Evangelical Deaconess Society of Wisconsin, Appellant.

*December 8, 1942—January 12, 1943.*

For the appellant there was a brief by *Lamfrom, Tighe, Engelhard & Peck* and *Harvey R. Habeck,* all of Milwaukee, and oral argument by *A. J. Engelhard.*

For the respondent there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

Briefs *amici curiæ* were filed by *Henry V. Kane* of Milwaukee, and by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Howard T. Foulkes* of counsel, all of Milwaukee.

FAIRCHILD, J. The question to be decided in this case is whether appellant is subject to the provisions of the "Employment Peace Act," ch. 111, Stats. It is conceded not to be within the named exceptions in the statute and that the words

of the statute are broad enough to cover it. It is urged that an exception of charitable institutions is to be read into the statute because of claimed legislative intent.

Under certain circumstances "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity v. United States,* 143 U. S. 457, 459, 12 Sup. Ct. 511, 36 L. Ed. 226. The determination of the question in this case, then, rests upon a consideration of the legislative intent, of whether there is any clear basis for saying that charitable institutions are not within the purview of the statute.

The name which the legislature chose for the act indicates what its purpose is, the promotion of peace in employment relations. In the declaration of policy at the beginning of the act it is recognized that the employer, the employee, and the public have an interest in the solution of this problem, and the statute is aimed at safeguarding the interests of all three groups. The law seeks to provide new methods of peacefully settling disputes which may arise, and thus prevent strikes which might have resulted under the common law. Respondent here points out that the act intends to confer a benefit on those whom it covers, and appellant's whole argument is based on a misconception of the nature of the policy and the operation of the statute. It is suggested that the order, if enforced, may endanger in some way the patients in the hospital, but there can be no greater hazard to the lives of patients in a hospital under the statute than there was before its enactment so far as strikes are concerned. The statute specifically provides that "nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction." Sec. 111.07 (1). It is to be assumed that since the statute, as before, a court would be quick to act to protect the public interest.

Since the policy of the statute is to promote peace in employment relations, to prevent rather than promote strikes, is

there any reason apparent in the statute indicating that charitable institutions are to be exempted from its provisions? While it is true that occasional words such as "craft" and "plant" are used, it is considered that this alone does not show a clear intent to limit the application of the act to industry. In drafting a statute for general application, it is difficult to make each term appropriate to each unit covered, and the spirit of an entire law cannot be upset by a few isolated terms which are not particularly apt in the case in point. Opinions that, if one exemption was made, it would be wise to make another have no bearing on the determination of legislative intent. There is nothing in the wording or nature of the named exemptions to indicate that the legislature intended an exemption for charitable institutions.

Appellant argues that the statute should only be applied to profit-making enterprises, that it is not applicable to non-profit organizations. Such an argument would have more force if this act placed a financial burden on the employer. The only such burden, if it may be termed such, which might result from this act is increasing wages to a fair standard or bringing conditions of work up to a proper standard. Is there any reason to suppose that the legislature intended that kitchen help, for example, who worked in a hotel or restaurant should have the right to organize and seek better wages and conditions of work through the state board while those doing similar work in a hospital should be barred from seeking similar objects through the mechanisms provided by the state? Problems arise between employers and employees in charitable institutions as well as in industry, and there is a similar need in each for methods of arriving at a peaceful settlement of differences. The Minnesota court in considering a similar statute said:

"The employer-employee problem is more far-reaching, and to impute to the legislature a purpose to provide means for the adjustment of labor relations in industry only would be

artificial. We are all aware that thousands are performing duties as employees in hospitals such as plaintiff which are the same as those done by employees in private industry. The position and rights of employees in a hospital are as important to the well-being of the whole community as that of a technical industrial employee. The simple fact is that employees are dependent upon their positions for a livelihood. This is true whether the employer is a charitable hospital or an automobile manufacturer." *Northwestern Hospital v. Public Building S. E. Union,* 208 Minn. 389, 394, 294 N. W. 215.

We conclude that there is no evidence of any intent on the part of the legislature to exempt charitable institutions from the provisions of ch. 111, Stats. Collective bargaining in institutions whose operation is so intimately connected with human life places a great responsibility on the parties thereto, especially where they are financially dependent on the generosity of the community, but there is no reason to suppose that if each enters into negotiations ready to co-operate and appreciating the problems of the other party to the negotiation, there may not be a fair, friendly, and mutually satisfactory adjustment of whatever controversies may arise, as contemplated by the statute.

*By the Court.*—Judgment affirmed.

BARLOW, J., took no part.