## NATIONAL LABOR RELATIONS BOARD v. CENTRAL DISPENSARY & EMERGENCY HOSPITAL.

### No. 8786.

United States Court of Appeals District of Columbia.

Argued Oct. 16, 1944.

Decided Nov. 13, 1944.

Writ of Certiorari Denied Feb. 26, 1945.
See 65 S.Ct. 684.

Mr. Charles F. McErlean, of Washington, D. C., Attorney, with whom Messrs. Alvin J. Rockwell, General Counsel, and Malcolm F. Halliday, Associate General Counsel, all of the National Labor Relations Board, both of Washington, D. C., were on the brief, for petitioner.

Mr. Joseph C. McGarraghy, of Washington, D. C., for respondent.

Before MILLER, EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

This case is before us on petition of the National Labor Relations Board for the enforcement of its order requiring the respondent to bargain collectively with Building Service Employees' International Union which has been certified by the Board as the exclusive representative of respondent's employees.

Respondent attacks the order on three grounds:

(1) It is a nonprofit charitable institution not engaged in trade, traffic, commerce, or transportation within the meaning of the National Labor Relations Act, 29 U.S.C. A. § 151 et seq., and therefore, is not subject to the Act;

(2) The Board's certification is improper because it is based upon an election at which out of 251 eligible voters only 108 cast ballots and of this number only 75 were for the union;

(3) By reason of changed conditions the court should not order the hospital to bargain with the union.

We will take up these defenses in the order in which they are presented.

(1) It seems to us clear that the activities of the respondent are covered by the

Act. Section 2(6), 29 U.S.C.A. § 152(6), makes the Act applicable to "trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States * * * or within the District of Columbia * * * or between points in the same State but through any other State or any Territory or the District of Columbia * * *."

Respondent's activities involve the sale of medical services and supplies for which it receives about $600,000 a year. It purchases from commercial houses material of the value of about $240,000 annually. It employs about 230 persons for nonprofessional services and maintenance work and 120 technical and professional employees. Such activities are trade and commerce and the fact that they are carried on by a charitable hospital is immaterial to a decision of this issue. In the case of American Medical Association v. United States[1] this court held that the sale of medical and hospital services for a fee has been considered as trade by English and American common law cases going back to 1793. In Jordan v. Tashiro,[2] the operation of a general hospital was said to be a "business undertaking" and such activity was included within the meaning of the words trade and commerce as used in a treaty with Japan.

Respondent argues that the spirit or policy of the Act is such that we should read into it an exemption of charitable hospitals. In the interpretation of its state labor relations act the Pennsylvania court[3] held that even though the words might be broad enough to include a hospital, nevertheless they could not conceive that the legislature intended to apply the act to such institutions. We are unable to follow the reasoning of the Pennsylvania court. We cannot understand what considerations of public policy deprive hospital employees of the privilege granted to the employees of other institutions.[4] The opinions of the Minnesota and the Wisconsin Supreme Courts,[5] holding that charitable hospitals and their nonprofessional employees are subject to the labor relations acts of those states, present what seems to us the only tenable view as to the spirit and policy of such statutes.

(2) The second defense is based on the fact that a majority of the employees did not cast their ballot. Thus, the election in this case was carried by a majority of a minority. It is, therefore, argued that the language of the Act referring to representatives selected for the purposes of collective bargaining "by the majority of the employees in a unit appropriate for such purposes,"[6] excludes an election by a minority.

This question seems to us to be settled by the Virginian Railway case,[7] where the Supreme Court, in interpreting a similar provision in the Railway Labor Act, said: "Election laws providing for approval of a proposal by a specified majority of an electorate have been generally construed as requiring only the consent of the specified majority of those participating in the election." This case has been followed uniformly by both the courts and the National Labor Relations Board.[8]

[1] 1942, 76 U.S.App.D.C. 70, 130 F.2d 233.

[2] 1928, 278 U.S. 123, 49 S.Ct. 47, 73 L.Ed. 214.

[3] Western Pennsylvania Hospital v. Lichliter, 1941, 340 Pa. 382, 17 A.2d 206, 132 A.L.R. 1146. Cf. Jewish Hospital of Brooklyn v. Doe, 1937, 252 App.Div. 581, 300 N.Y.S. 1111.

[4] Cf. International Reform Federation v. District Unemployment Compensation Board, 1942, 76 U.S.App.D.C. 282, 131 F.2d 337.

[5] Northwestern Hospital v. Public Building Service Employees' Union, 1940, 208 Minn. 389, 294 N.W. 215; Wisconsin Employment Relations Board v. Evangelical Deaconess Society, 1943, 242 Wis. 78, 7 N.W.2d 590.

[6] National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. §§ 151, 159: "(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. * * *"

[7] Virginian Railway Co. v. System Federation No. 40, 1937, 300 U.S. 515, 560, 57 S.Ct. 592, 605, 81 L.Ed. 789.

[8] New York Handkerchief Mfg. Co. v. N. L. R. B., 7 Cir., 1940, 114 F.2d 144, 149, certiorari denied 311 U.S. 704, 61 S. Ct. 170, 85 L.Ed. 457; N. L. R. B. v. National Mineral Co., 7 Cir., 1943, 134 F.2d 424, certiorari denied 320 U.S. 753, 64 S. Ct. 58; N. L. R. B. v. Whittier Mills Co., 5 Cir., 1940, 111 F.2d 474; Marlin-Rockwell Corp. v. N. L. R. B., 2 Cir., 1941, 116 F.2d 586, certiorari denied 313

Respondent argues that in the Virginian Railway case, supra, an actual majority cast their ballots, whereas in the case before us only a minority voted. In the New York Handkerchief case where only 56 out of 225 employees voted, the court upheld the Board's certification, but pointed out that the employer by his unlawful conduct had been responsible for the minority vote. The opinion went on to say "It does not follow, however, that the Board could justify itself in the exercise of such authority in every case regardless of the number who participated in the election." In the other cases cited above where a minority voted there were also facts showing unlawful conduct by the employer which might have affected the number of voters.

█ It does not follow from this, however, that any rigid rule requiring the vote of a majority of all employees, in the absence of employer coercion, should be adopted. The real test is whether the election is actually representative. This is always a question of fact in the particular case. The Board has recognized this principle by an administrative ruling that in minority elections it will investigate and determine whether the election was actually representative.[9] It did so in this case and affirmatively found that the election was representative.

This interpretation seems to be within the spirit of the warning given by the court in the New York Handkerchief case, supra, and we think should be approved. While the standards by which the Board determines whether a minority election is truly representative are necessarily vague, they may still be subject to judicial examination and review in case the judgment of the Board is arbitrary.

█ (3) The final defense argued by the respondent is that by reason of changed conditions more than two years after the election was held this court should not now order the hospital to bargain with the union. In support of this contention respondent has filed a motion for leave to adduce additional evidence showing that out of a total of 251 employees who were eligible to vote in the election only 43 remain at the present time. We consider this evidence irrelevant under the circumstances of the present case. The certification of the union which contains the finding that at that time the union was representative was issued by the Board in December, 1942. Six months later the Board issued an order to cease and desist from refusing to bargain collectively. At that time the respondent had the right to appeal to this court under Section 10(f) of the Act. Respondent also had a right to petition the Board at that time for a hearing on whether the six months' delay in issuing the order had created a change in the representative character of the union. Respondent took neither of these steps. While the Board delayed over a year in bringing the case before us for enforcement, respondent cannot now take advantage of that fact because during the entire period it lay within its own power to seek relief.[10]

There is, therefore, nothing in this case which takes it out of the rule laid down by the Supreme Court in Franks Brothers Co. v. National Labor Relations Board,[11] where the Court held that there was no requirement that union membership be kept intact during delays incident to hearing on the question of union representation.[12] In that decision Mr. Justice Black said:

"Contrary to petitioner's suggestion, this remedy, as embodied in a Board order, does not involve any injustice to employees who

U.S. 594, 61 S.Ct. 1116, 85 L.Ed. 1548; Matter of Western Foundry Co., 42 N. L. R. B. 302; Matter of Spring City Foundry, 11 N. L. R. B. 1286; Matter of R. C. A. Mfg. Co., Inc., 2 N. L. R. B. 159.

9 Matter of S. A. Kendall, Jr., 41 N. L. R. B. 395 (1942); Matter of Bernard Gold and Jacob Wasserman, 55 N. L. R. B. 592.

10 Reilly v. Millis, 1944, —— U.S.App. D.C. ——, 144 F.2d 259.

11 1944, 321 U.S. 702, 64 S.Ct. 817, 819. See also N. L. R. B. v. P. Lorillard Co., 1942, 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380.

12 Cf. N. L. R. B. v. Fansteel Corp., 1939, 306 U.S. 240, 59 S.Ct. 490, 83 L. Ed. 627, 123 A.L.R. 599. In a different situation where the employer had asked for a rehearing before the Board on the question of representation, the Court of Appeals for the 7th Circuit required a new election.

"It is not to be overlooked that the controversy concerning the Union as an appropriate bargaining agency occurred in 1937, now more than three years past. As pointed out heretofore, this and other courts have held that where a majority is shown, there is a presumption of its continuance in the absence of

may wish to substitute for the particular union some other bargaining agent or arrangement. For a Board order which requires an employer to bargain with a designated union is not intended to fix a permanent bargaining relationship without regard to new situations that may develop. See Great Southern Trucking Co. v. Labor Board, 4 Cir., 139 F.2d 984, 987. But, as the remedy here in question recognizes, a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed. See National Labor Relations Board v. Appalachian Power Co., 4 Cir., 140 F.2d 217, 220-222; National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 133 F.2d 876, 881, 882. After such a reasonable period the Board may, in a proper proceeding and upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships. Id.; see 29 U.S. C. § 159(c), 29 U.S.C.A. § 159(c)."[13]

It may well be that following this suggestion the Board should re-examine the situation as of the present date if the facts alleged in the affidavits filed by respondent are true. In this case there was no stubborn refusal to bargain on the part of the respondent. It appeared from the argument that it was solely motivated by a desire to get a judicial determination of the novel question whether a hospital was included within the Act. The Board offered no reason for its long delay. But this is a matter lying within the discretion of the Board. The respondent cannot take advantage of any delay during a period when it was in a position to bring the case to issue on its own behalf.

The petition for enforcement is granted and a decree will be entered directing that the order be enforced.

Enforcement granted.

---

proof to the contrary, but we are of the opinion that such presumption continues for a reasonable time only. Certainly there is no presumption that it continues forever, and we think that it does not continue for as long as three years, especially in face of an assertion and offer of proof to the contrary. * * *

"It appears reasonable to us, in view of the circumstances, in order to properly safeguard the rights of the interested parties, that the Board conduct an election for the purpose of determining whether the Union in question now represents a majority, in the appropriate unit, of petitioner's employees. Our order in this respect will, therefore, be conditional upon such ascertainment." Stewart Die Casting Corp. v. N. L. R. B., 7 Cir., 1940, 114 F.2d 849, 858, 859.

[13] Note 11, supra, 321 U.S. at pages 705, 706, 64 S.Ct. at page 819.