## NATIONAL LABOR RELATIONS BOARD
### v. TODD CO., Inc.

#### No. 24, Docket 20990.

United States Court of Appeals
Second Circuit.

March 30, 1949.

David P. Findling, of Washington, D. C. (Ruth Weyand, Marcel Mallet-Prevost, Thomas B. Sweeney, and A. Norman Somers, all of Washington, D. C., of counsel), for petitioner.

Harris, Beach, Keating, Wilcox & Dale, of Rochester, N. Y., for respondent.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ We discern no impropriety in the Board's procedure in transferring the case to itself without receiving an Intermediate Report from the first Trial Examiner.[1] Moreover, at the subsequent hearing before the second Examiner, the Todd Company had full opportunity to have him see and hear all the witnesses who had previously testified, and he issued an Intermediate Report.

■■ The Board, adopting his findings which were based on ample evidence, found that the Company did not bargain in good faith in that it negotiated with a fixed determination not to sign a contract with the union even if it and the union should arrive at all the terms of an agreement. The evidence shows, for instance, that the company had adopted a "principle not to sign an agreement," and that a proposal that it give the union a letter stating the terms of an agreement, if one were reached, was refused by the company because the signing of a letter would be "just as legal and binding as the signing of a contract." We agree with the Board in rejecting, as "without merit and contrary to the established law on the subject," the contentions of the company (1) that the question of whether a contract should be signed is a bargainable issue, and (2) that, inasmuch as no final collective bargaining agreement had been reached, to raise the question of signing a contract was pre-

mature. As the Board said, "an employer violates the good faith requirement of the collective bargaining mandate when, throughout the negotiations, he persistently takes the position that he will not enter into a signed agreement." See, e. g., H. J. Heinz Co. v. N.L.R.B., 311 U.S. 514, 525-526, 61 S.Ct. 320, 85 L.Ed. 309; Art Metals Construction Co. v. N.L.R.B., 2 Cir., 110 F.2d 148, 150; N.L.R.B. v. Register Publishing Co., 9 Cir., 141 F.2d 156, 160. Since the company's absolute and unyielding "principle" was at variance with the obligations imposed on it by the Act, the Board's order that it cease and desist was proper. The moral is that "hard-and-fast lines ever cut the fingers of those who draw them".[2]

■ As the evidence amply supports the finding that the union did not waive its right to a signed contract, there is no need to consider the legal consequences of such a waiver. We think the evidence also sufficiently supports the finding that the company "additionally interfered with, restrained and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act [29 U.S.C.A. § 157]."[3]

■ The Board had discretion, which it did not abuse, to deny the intervening petition filed on January 7, 1947, by a majority of the employees. Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 704–705, 64 S. Ct. 817, 88 L.Ed. 1020; N.L.R.B. v. A. Sartorius & Co., Inc., 2 Cir., 140 F.2d 203,

[1] N. L. R. B. v. A. Sartorius & Co., 2 Cir., 140 F.2d 203, 205; N. L. R. B. v. Standard Oil Co., 2 Cir., 138 F.2d 885, 887-888.

[2] The Note Books of Samuel Butler (1917) 170.

[3] The Intermediate Report, approved and adopted by the Board, reads in this respect as follows:
"As has been found heretofore, during the course of the bargaining negotiations, Superintendent Price told the Union representatives that the respondent was willing to spend $100,000 to break the Union rather than sign a contract. On a later occasion, Price told Shulman that the respondent could shut down the department which the Union represented or transfer the work to other plants. Still later Price informed Shulman that the respondent's priorities would probably be terminated because of its opposition to the Union's demands, but that Walter Todd preferred that to signing a contract.
"All these statements constituted threats of reprisals against the Union and the employees, respectively, as a consequence of the Union's insistence upon a signed contract. Whether or not Price was authorized to so express himself is beside the point. As the representative of the respondent, armed with authority to negotiate on its behalf, superintendent of its printing division, and possessed of apparent authority to interpret and state the respondent's policies, his declarations are imputable to the respondent.
"It is therefore found that by this conduct the respondent additionally interfered with, restrained and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act."

708

207. The company contends that enforcement of the Board's order should be denied because the Board waited from October 4, 1946 until January 23, 1948, to seek enforcement through a court order. We cannot agree. The company could have sought prompt judicial review of that order, under 29 U.S.C.A. § 160(b). Not having done so, and having failed to comply with that order, it is in no position to complain of any change of circumstances during the period of non-compliance.

Enforcement will be granted.