## NATIONAL LABOR RELATIONS BOARD v. ANDREW JERGENS CO.

### No. 12051.

United States Court of Appeals
Ninth Circuit.
May 17, 1949.
Rehearing Denied June 24, 1949.

132

David P. Findling, Associate General Counsel, A. Norman Somers, Asst. Gen. Counsel, Ruth Weyand, Asst. Gen. Counsel and Thomas J. McDermott, Attorney, National Labor Relations Board, Washington, D. C., for petitioner.

Frank Mergenthaler, Gibson, Dunn & Crutcher, J. Stuart Neary and Ira C. Powers, Los Angeles, Cal., for respondent.

Before STEPHENS, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

The National Labor Relations Board has petitioned this court to enforce its order of February 26, 1948, directing respondent to cease and desist from refusing to bargain collectively with the General Warehousemen's Union, Local 598, of the Teamsters, Chauffeurs, Warehousemen and Helpers, AFL, hereinafter denominated as the Teamsters. The Board's jurisdiction is conceded. Respondent insists that the finding of the Board that it, respondent, committed unfair labor practices within the meaning of § 8(5) of the National Labor Relations Act, 29 U.S.C.A. § 158(5), in its bargaining relations with the Teamsters, finds no support either in law or in fact.

On January 4, 1946, the Teamsters were certified by the Board as the bargaining representative for respondent's employees. On January 17, 1946, the first and only meeting between respondent and the Teamsters was held for the purpose of negotiating a contract. The record of this meeeting discloses that the parties were in fairly close agreement on all issues except union security. The Teamsters were particularly anxious to obtain some kind of union security provision in the contract. The attorney representing respondent stated that he was without authority to negotiate on that subject,

but he knew respondent had consistently opposed a union security clause and asked postponement of negotiations for one week in order to permit him to consult the officers of the respondent company. The union security provision being regarded as of paramount importance by the Teamsters it agreed to the postponement. Respondent promised to answer within a week; none was received until an entire month elapsed. In the meanwhile, the Teamsters had interpreted the delay as "stalling" on the part of respondent and, receiving no satisfactory response to attempts to get an answer, a strike was ordered. The day following the institution of the strike a letter was received by the Teamsters from respondent.

The letter was written by respondent's attorney. It stated in substance that respondent would not come to a decision on the union security issue until some disposition had been made of a prior directive of the War Labor Board, issued May 29, 1944, which had directed respondent,

(1) to recognize for collective bargaining purposes an organization known as the Cosmetic Workers,

(2) to enter into a maintenance of membership clause with the Cosmetic Workers, and

(3) to effect a wage increase of 5 cents an hour, retroactive to February 1, 1943.

Respondent's attorney had relied on this same War Labor Board directive in support of his refusal to negotiate concerning union security in the January 17, 1946, meeting. Respondent's contention is that a union security provision with the Teamsters would be inconsistent with the War Labor Board directive, thus rendering respondent liable to possible executive sanctions. See Executive Order 9250, 50 U.S. C.A.Appendix, § 901 note 7 Fed.Reg. 7871, 7873, issued pursuant to the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix 901 et seq.

A union called The Cosmetic Workers had been the certified bargaining agent for respondent's employees subsequent to December 23, 1941. It had negotiated unsuccessfully with respondent for approximately one year, after which time it finally agreed to the company's terms in an effort to obtain a contract. However, the company then refused to bargain with the Cosmetic Workers on the ground that they no longer represented a majority of the employees. The question, along with a wage increase issue, was certified to the War Labor Board, and the directive of May 29, 1944 issued. Respondent refused to comply with any of its terms. Thereafter, the Cosmetic Workers Union, apparently discredited in its attempt to achieve effective recognition, affiliated with the Teamsters on July 1, 1945.

Union security is properly a "condition of employment" within the meaning of § 9(a) of the National Labor Relations Act and hence, is within the statutory area of collective bargaining. Unless prevented from so doing by a valid and existing order of the War Labor Board, respondent, in refusing to bargain with Teamsters with reference to union security, committed an unfair practice under § 8(5) of the Act. A reading of the War Labor Board's decision in question, 18 W.L.R. 582, resolves this issue. It expressly recommends bargaining with and granting a maintenance of membership clause to the Cosmetic Workers solely because that union had been certified by the National Labor Relations Board. The certification of the Cosmetic Workers as the bargaining agent by the National Labor Relations Board was recognized by the War Labor Board as precluding it from granting a new election sought by respondent. It held that the certification of the Cosmetic Workers " * * * stands until such certification has been rescinded by the National Labor Relations Board or the courts. ⎧Therefore, the panel recommends that the company be ordered to bargain with the union * * *". It, the War Labor Board, in effect sought to enforce the certification of the National Labor Relations Board since pre-existing certification of the Cosmetic Workers furnished the sole basis for its order. The conclusion is inescapable that such force and effect as the War Labor Board's directive had was contingent upon the continuing certification of the Cosmetic Workers as the bargaining agent. At the time the Teamsters became the certified bargaining agent, pursuant to an order of the National Labor Relations Board, the

foundation upon which the War Labor Board directive rested was destroyed and the derivative necessarily fell with it. By its own terms the War Labor Board directive ceased thereafter to bind respondent. In passing, it might also be pointed out that at most the directive was advisory and was not enforceable by legal process. Employers Group of Motor Freight Carriers v. National War Labor Board, 79 U.S.App. D.C. 105, 143 F.2d 145.

■ The War Labor Board directive furnished no legitimate basis or justifiable reason for respondent's refusal to bargain. In addition, the Board found respondent lacking in good faith in its negotiations with Teamsters and therefore guilty of an unfair practice under § 8(5) of the National Labor Relations Act. This finding is supported by substantial evidence. The delay in answering the Teamsters after the January 17, 1946 meeting may reasonably be attributed to "stalling" tactics by the company, especially in light of the history of its relations with the Cosmetic Workers. It is evident respondent gave little weight to the force and effect of the War Labor Board directive as evidenced by its refusal to comply with its terms on the ground that it was invalid since the Cosmetic Workers did not represent a majority of the employees. The provisions of the War Labor Board directive were openly violated by respondent, if its construction be correct, when it recognized the Teamsters as the bargaining agent for all purposes other than union security.

■ Respondent asserts that the portions of the Board's order which require respondent to bargain collectively with the Teamsters is in violation of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., which makes it an unfair labor practice to enter into a union security agreement with the union unless the employees have authorized such agreement by an election for that purpose. The contention is without merit. The order to bargain means to do so within the prescribed limits of the law. Where the law requires union security to be approved or authorized by the employees, the order to bargain must be construed as contemplating that action.

■ In oral argument counsel for respondent has pointed to the lapse of more than a year during which the Board was considering the case, also a lapse of seven months after the Board's order before a petition was made for enforcement of the order. It is suggested that the delay renders it inequitable to enforce the order at this late day. Respondent cannot take advantage of the Board's delay in order to relieve itself of making amends for its unfair practices. Section 10(f) of the Act gave immediate right of review to respondent upon issuance of the Board's order. In the following cases enforcement was ordered after considerably more delay than is present in the instant case. National Labor Relations Board v. Central Dispensary and Emergency Hospital, 79 U.S.App.D.C. 274, 145 F.2d 852; National Labor Relations Board v. Norfolk Shipbuilding & Drydock Co., 4 Cir., 1949, 172 F.2d 813; National Labor Relations Board v. Todd Co., 2 Cir., 1949, 173 F.2d 705.

■ In its answer to the Board's petition for enforcement of its order, respondent alleges that since prior to January 1, 1948, none of its employees were members of the Teamsters. The Board admits the truth of this allegation in its brief. Respondent then argues that because of this loss of membership the Teamsters are no longer the proper representative of the employees and, therefore, the Board's order should not be enforced.

Loss of membership is not a bar to action by the Board. It is established that, "It is for the Board not the courts to determine how the effect of prior unfair labor practices may be expunged." International Ass'n of Machinists v. N.L.R.B., 311 U.S. 72, 82, 61 S.Ct. 83, 89, 85 L.Ed. 50. The Supreme Court of the United States has held that the N.L.R.B. is properly within its statutory discretion (see § 10(c) of the Act,) in ordering a company to bargain collectively with a labor organization which has lost its majority after the company's commission of an unfair practice in refusing to bargain. Franks Bros. Co. v. N.L.R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; International Ass'n of Machinists v. N.L.R.B., supra; National Labor Relations

Board v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226.

The fact that the Board has exercised its remedial discretion in a manner that militates against a present majority of the bargaining unit does not, according to the Franks case, supra, involve any injustice to the employees who wish a different arrangement. "For a Board order which requires an employer to bargain with a designated union is not intended to fix a permanent bargaining relationship without regard to new situations that may develop. * * * After such a reasonable period the Board may, in a proper proceeding and upon a proper showing take steps in recognition of changed situations which might make appropriate changed bargaining relationships." [321 U.S. 702, 64 S.Ct. 819] To this we might add that § 9(c) of the Labor Management Relations Act of 1947 expressly extends the right to question a particular union's certification to "* * * an employee or group of employees or any individual or labor organization acting in their behalf * * *", and also to an employer.

■ Respondent contends that the principles outlined above are inapplicable to this case because the Board did not consider the loss of membership in forming its order and has made no finding that the loss of majority resulted from the unfair practices. These facts were present in the following cases, nonetheless the Board's orders were enforced: National Labor Relations Board v. Norfolk Shipbuilding & Drydock Co., 4. Cir., 1949, 172 F.2d 813; National Labor Relations Board v. Arnolt Motor Co., 7 Cir., 1949, 173 F.2d 597; National Labor Relations Board v. Swift & Co., 3 Cir., 162 F.2d 575; National Labor Relations Board v. Central Dispensary and Emergency Hospital, 79 U.S.App.D.C., 274, 145 F.2d 852; National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632. The theory of these cases is that it is reasonable to assume that in the presence of unfair practices a decline in employee support does not reflect an untrammelled expression of the employees' will, and that the unfair practices must be purged before the representation question can be accurately determined. It is thought that an overzealous adherence to shifts in union membership in such situations would in effect put the court's stamp of approval on the unfair practices that precede such shifts.

■ It seems to us there is further support for the enforcement of the Board's order in the known and established policy of the National Labor Relations Board in dealing with like cases. In the Karp Metal case, 51 N.L.R.B. 621, the Board, in a similar situation, stated that it was its firm policy to assume that any losses of membership which are concurrent with or subsequent to unremedied unfair labor practices are results of such practices. In forming this policy the Board admits that some losses may be motivated by other factors, but considers it impossible to disentangle them so long as the refusal to bargain stands. See also, Pure Oil Co., 62 N.L.R.B. 1039, 1044, 1045. It would be useless to remand this case to the Board for findings on this matter, since the order in the instant case applies this policy to the facts as respondent has presented them to us. We are of the opinion that such policy is well within the scope of § 10(c) of the Act, which permits the Board to take such affirmative action as will effectuate the policies of the Act.

■ While its employees were still on strike, respondent, without consulting the Teamsters, granted a general wage increase effective July 1, 1946. The Board found this action constituted an independent refusal to bargain within the meaning of § 8(5) of the Act, and included appropriate remedial provisions in its "cease and desist" order.

Respondent makes two contentions with respect to this finding of the Board. In the first place it is insisted that the increase was not the unilateral action of respondent, but was authorized by the Teamsters in the January 17, 1946 meeting, when it was alleged to have been stated by the union that whatever increase was put into effect on a national scale would be satisfactory. There is ample evidence in the record to support the Board's finding that the increase

was in fact the unilateral act of respondent. The Teamster's representative testified that no specific wages were agreed upon in the January 17, 1946 meeting, although it was considered by all that there would be no particular difficulty with that issue once the union security problem had been settled. Following that meeting, in which no binding agreement on any issue was achieved, there were no further negotiations concerning wages before the increase was made.

In the alternative respondent insists that under the circumstances unilateral action was justified. While not arguing that such unilateral action is not ordinarily a violation of § 8(5) of the Act, see, May Department Stores v. N.L.R.B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145, it is contended that when an impasse is reached between the bargaining parties so that there is a suspension of negotiations, the employer is free to act with respect to terms and conditions of employment to which the union would not agree. See, National Labor Relations Board v. Sands Mfg. Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682. We think this principle is limited to cases where there has been a bona fide but unsuccessful attempt to reach an agreement with the union, or where the union bears the guilt for having broken off relations. In such a situation the employer has fulfilled his statutory obligation and is free to exercise his power of management. Cf. National Labor Relations Board v. Sands Mfg. Co., supra; Montgomery Ward, Inc., 39 N.L.R.B. 229. In the instant case respondent was found to have refused to bargain in good faith. Under this circumstance the unilateral wage raise may be said to have been in furtherance of that refusal and, viewed in the light of respondent's continued attempts to circumvent the effect of the Teamsters' certification, furnishes additional evidence of its bad faith toward its bargaining responsibilities. May Department Stores v. N.L.R.B., supra, presents a similar situation. There the employer made a unilateral application to the War Labor Board in order to effect a wage increase it had decided upon. The certified union was not consulted because the employer wished to contest the appropriateness of the bargaining unit it

represented. The Supreme Court, after first determining that the unit was appropriate and that it was an unfair practice not to bargain with certified union, held that the employer's act constituted an unfair practice. See also, National Labor Relations Board v. Hoppes Mfg. Co., 6 Cir., 170 F.2d 962.

Respondent makes four contentions in support of its claim that it was not afforded a fair hearing before the National Labor Relations Board:

(1) That the Board failed to make proper findings of fact, and thereby did not comply with the requirements of due process. The Board's decision, which adopted, with certain additions and modifications, the findings of the trial examiner, set forth at considerable length the substance of the testimony and specific findings of fact based thereon. While the findings are presented in narrative form it is apparent therefrom that respondent was fully informed of "the basic facts which are needed to sustain the order." Morgan v. United States, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288. This is sufficient under the National Labor Relations Act as well as the Fifth Amendment.

(2) That the Board should have granted its motion to strike the complaint for the reason that it was drafted in the language of the statute rather than alleging facts. We think the complaint sufficient in the light of the holding of this court in National Labor Relations Board v. Pacific, Gas & Electric Co., 9 Cir., 118 F.2d 780, 788. Further, a bill of particulars was furnished respondent which apprised it fully of the issues that were to be presented.

(3) That it was denied a fair hearing because of alleged erroneous rulings by the trial examiner on the admission of evidence. While § 10(b) of the National Labor Relations Act (which was in effect at the time of the hearing) provides that "rules of evidence prevailing in courts of law or equity shall not be controlling", we think the trial examiner applied correct principles of law in excluding the proffered evidence.

(4) That the trial examiner ignored all respondent's evidence and arbitrarily gave full credence to all of the Teamster's witnesses. Pittsburgh S. S. Co. v. N.L.R.B., 6 Cir., 167 F.2d 126, is cited. We find no such situation here as occurred in Pittsburgh Company case.

We conclude that the respondent was accorded a fair hearing.

Order enforced.