## UTAH LABOR RELATIONS BOARD v. UTAH VALLEY HOSPITAL.

No. 7612.   Decided September 11, 1951.   (235 P. 2d 520.)

464

See 56 C. J. S., Master and Servant, sec. 28(6). National Labor Relations Act as excluding state action. 11 Am. Jur., Commerce, sec. 33; 174 A. L. R. 1051.

*Clinton D. Vernon,* Atty. Gen., *Allen B. Sorensen,* Deputy Atty. Gen., for plaintiff.

*Louis H. Callister,* Salt Lake City, for defendant.

CROCKETT, Justice.

In this proceeding the Utah Labor Relations Board, herein called the "Board", seeks to enforce against the Utah Valley Hospital, an order which the Board made requiring the Hospital to bargain collectively with the Government and Civic Employee Organizing Committee, Local 1699, C. I. O., hereinafter referred to as the "Union". In the pleadings and briefs the parties are referred to by various titles. Under our new Utah Rules of Civil Procedure, Rule 72(c) it is provided that

"* * * In original proceedings in the Supreme Court the party making the original application shall be known as the plaintiff and any other party as the defendant."

The question is whether a charitable hospital is subject to the Utah Labor Relations Act. U. C. A. 1943, 49-1-8 et seq. We hold that it is.

No objection is made to the procedure by which the Union was established as the bargaining unit for the non-professional employees of the Hospital: nurses' aides, laundry, kitchen and other maintenance employees. An election was held among them on May 22, 1950 in which a total of 51 votes were cast, 45 were for the Union, 2 for no union, and 4 ballots were invalid. The Board thereafter on June 6, 1950, certified the Union as the exclusive bargaining agent for the employees in that unit.

On June 20, 1950, the Union filed an unfair labor charge with the Board setting forth that the Hospital refused to bargain collectively with the Union in violation of law, Sec. 49-1-16(1)(d), Ch. 66, Laws of Utah 1947. Subsequent to an investigation and hearing, the Utah Board adopted findings and conclusions recommended by the referee that the Hospital was guilty of an unfair labor practice and ordered it to enter into collective bargaining with the Union and notify the Board of its compliance with the order within 15 days. It is this order which the Board now seeks to have enforced.

The Hospital admits that it refused to bargain with the Union. It maintains that the Board has no jurisdiction over the subject matter of this cause and that it is subject to control only by Congress and the National Labor Relations Board, In support of its position, the Hospital urges three propositions: (1) That its business "affects interstate commerce" and is therefore subject only to Federal regulation; (2) That Congress has preempted this field of labor-management relations which precludes control by the State; and (3) That non-profit charitable hospitals such as itself should be and are excluded from operation of the Utah Labor Relations Act.

With respect to the defendant's first contention relating to interstate commerce, there is considerable doubt both as to whether the business of the hospital is interstate commerce or may properly be said to "affect interstate commerce" and further, whether the nature and volume of defendant's business is such that the National Labor Relations Board would take jurisdiction even if it were otherwise subject to the jurisdiction of that Board. See 2 C. C. H. Labor Law Reporter 14118 et seq. But the question is not of importance here because as we view this case that matter could not be controlling. It is accepted beyond dispute that even in businesses which are in interstate commerce, the states may control labor-management relations unless Congress has occupied the field and thus precluded state regulation. *Algoma Pl. & V. Co.* v. *Wis. Emp. Rel. Board,* 336 U. S. 301, 69 S. Ct. 584, 93 L. Ed. 691; *International Union, U. Auto Wkrs., A. F. L.* v. *Wis. Emp. Rel. Board,* 336 U. S. 245, 69 S. Ct. 516, 93 L. Ed. 651; *Allen-Bradley Local No. 1111* v. *Wis. Emp. Rel. Board,* 315 U. S. 740, 62 S. Ct. 820, 86 L. Ed. 1154; *Simpson* v. *Shephard,* 230 U. S. 252, 33 S. Ct. 729, 57 L. Ed. 1511. That rule was recognized by this court in the case of *State* v. *Montgomery Ward,* 120 Utah 294, 233 P. 2d 685. Mr. Chief Justice Wolfe expressly pointed out that the National Labor Relations Act, 29 U. S. C. A. § 151 et seq.,

in dealing with certain unfair labor practices did not prevent the states from prohibiting other practices which they deemed unfair and not listed in the national act. That case is decided upon the proposition that Sec. 302 of the Labor Management Relations Act, 29 U. S. C. A. § 186, deals with the subject of check-off effectively and that State action in that field is therefore precluded. Mr. Justice Latimer in his dissenting opinion in that case summarizes the cases in which the United States Supreme Court has considered the problem of conflict between federal and state law in the field of labor-management relations. Those cases and others on the subject from state courts, proceed on the assumption that the above announced principle is correct. As stated by Mr. Justice Frankfurter in his dissent in *Hill* v. *State of Florida*, 325 U. S. 538, 65 S. Ct. 1373, 1377, 89 L. Ed. 1782:

"* * * The States, in short, may speak on matters even in the general domain of commerce so long as Congress is silent."

It thus appears securely established that even conceding the business of respondent was either in or affected interstate commerce, that fact would not prevent the Utah Board from having control of the labor-management relations unless Congress has occupied the field so as to oust the state of control. Defendant's second contention is that Congress has done so.

It is well settled that Federal legislation applies to labor-management relations in business which affect interstate commerce. See *National Labor Relations Board* v. *Fainblatt*, 306 U. S. 601, 59 S. Ct. 668, 83 L. Ed. 1014. Such federal legislation prevails over the state law whenever the two conflict. *Bethlehem Steel Co.* v. *N. Y. State Labor Rel. Bd.*, 330 U. S. 767, 67 S. Ct. 1026, 91 L. Ed. 1234. *Allen-Bradley, Local No. 1111* v. *Wis. Empl. Rel. Bd.*, supra; *Hill* v. *State of Florida*, supra; and see Annotation 93 L. Ed. 470. But the conflict must be definite and irreconcilable. On this subject, the Supreme Court of

the United States in *Sinnot* v. *Davenport,* 22 How. 227, 16 L. Ed. 243, said:

"The repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together."

This rule has been reiterated by that court numerous times. *Mo., K. & T. R. Co.* v. *Haber,* 169 U. S. 613, 18 S. Ct. 488, 42 L. Ed. 878, and *Algoma Pl. & V. Co.* v. *Wis. Empl. Rel. Bd.,* supra, where the court used this language:

"* * * in cases of concurrent power over commerce State Law remains effective so long as Congress has not manifested an unambiguous purpose that it should be supplanted." [336 U. S. 301, 69 S. Ct. 590.]

In analyzing the intent of Congress in regard to the instant problem, a bit of background is helpful. It is certain that Congress did enter this field. Charitable hospitals, if in Interstate Commerce, were at one time subject to the National Labor Relations Act. There was no specific reference in that act to such hospitals. However, in the case of *National Labor Relations Board* v. *Central Dispensary, & Emergency Hospital,* 79 U. S. App. D. C. 274, 145 F. 2d 852, 853, certiorari denied 324 U. S. 847, 65 S. Ct. 684, 89 L. Ed. 1408, the hospital therein, a nonprofit charitable institution, contended that it was not engaged in trade, traffic or commerce within the meaning of the National Labor Relations Act, 29 U. S. C. A. § 151 et seq. and not subject to the act. The case holds that

"Such activities (of a hospital) are trade and commerce and the fact that they are carried on by a charitable hospital is immaterial to a decision", citing supporting authorities.

It held the hospital subject to the act. Certiorari was denied in that case February 26, 1945. Thereafter in the Labor Management Relations Act of 1947 (Taft-Hartley), Congress amended Section 152(2) specifically stating that the term "employer"

"* * * shall not include * * * any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual * * *."

Thus, by clear and unequivocal language, Congress removed from the coverage of the National Labor Relations Act, institutions of the nature of the defendant. The next subject of inquiry then is whether, once having entered the field, Congress retains control, or if it leaves the field, does it in effect cede control back to the state.

The reasoning of the hospital herein is that because, according to the Dispensary case just referred to above, the National Labor Relations Act prior to the 1947 amendment applied to charitable hospitals, that Congress had thus occupied that field of labor-management relations; that as a consequence thereof the exclusion of such hospital by the 1947 amendment amounted to an affirmative enactment that their labor relations should not be regulated. On the other hand, the Utah Labor Board's position is that the amendment merely disclaimed control in that field by Congress and left it to the state.

If Congress had intended, as defendant wishes us to infer, that charitable hospitals should not be subject to labor relations legislation, it would have been easy to so state. In determining what their intent was, it is permissible to refer to the committee report of the House of Representatives where this amendment originated.

The House Report (House Report No. 245 on H. R. 3020, 80th Congress, 1st Session) contains the following comment on the above provision:

" 'Churches, hospitals, schools, colleges and societies for the care of the needy are not engaged in "commerce" and certainly not in interstate commerce. These institutions frequently assist local governments in carrying out their essential functions, and for this reason *should be subject to exclusive local jurisdiction.*' (Emphasis added.)"

The result advocated by the Hospital does not reconcile itself with either the requirement of clear intent of Con-

gress to exclusively occupy this field or the irreconcilable conflict with state law. It is obvious that the Utah Act can freely operate within its field without conflicting with the Federal act. It is not only not clear that Congress intended to occupy the field, the fact is, that the reverse is true. Congress has expressed its clear intent not to do so.

How can it reasonably be said that the Hospital, being thus clearly excluded from the operation of the National Labor Relations Act, is subject to its "exclusive jurisdiction and therefore not within the regulatory powers of the State law." It would seem paradoxical indeed to hold, as defendant urges us to do, that the hospital is beyond the control of the Utah Legislature because it is controlled by an act of Congress, which by its very terms excludes the Hospital from its operation. In the *Algoma Plywood & V. Co.* v. *Wis. Emp. Rel. Board* case, above referred to, the U. S. Supreme Court stated, 336 U. S. at page 314, 69 S. Ct. at page 591, 93 L. Ed. 691:

"* * * Since the enumeration * * * of unfair labor practices over which the National Board has exclusive jurisdiction does not prevent the States from enforcing their own policies in matters not governed by the federal law, such freedom of action by a State cannot be lost because the National Board has once held an election under the Wagner Act. * * *"

Congress having disclaimed control of charitable hospitals, the State law exists unhampered by any conflicting Federal act. This brings us to a consideration of defendant's last objection; that because it is a charitable hospital it should be excluded from operation of the Utah Labor Relations Act.

The Hospital presented evidence that: Its agreement with financial sponsors requires it to devote 25% of its work to charity; it accepts all patients whether they can pay or not; it has never refused a patient because he could not pay; and no profits are paid to any one. From those

representations, we accept defendant's contention that it is properly classified as a charitable hospital.

The Hospital concedes that there is no express exemptions relating to such hospitals in the definition of the term "employer" set forth in Section 49-1-10(2), Ch. 66, Laws of Utah 1947. As a matter of fact, the definition is identical with that contained in the Federal act prior to the 1947 amendment, which was held in the case of *N. L. R. B.* v. *Central Dispensary etc.*, supra, to include such charitable hospitals.

Defendant cites and relies on *Western Pa. Hospital* v. *Lichliter*, 340 Pa. 382, 17 A. 2d 206, 132 A. L. R. 1146; *St. Lukes Hospital* v. *Labor Relations Comm.*, 320 Mass. 467, 70 N. E. 2d 10; and *Jewish Hospital of Brooklyn* v. *Doe*, 252 App. Div. 581, 300 N. Y. S. 1111, 1119. In those cases, the courts held that charitable hospitals were not meant to be included within the respective state labor relations acts upon the ground that looking to the history and purpose of the acts, even though they were not expressly excepted, a fair interpretation thereof leads to the conclusion that the legislatures of those states did not intend to include non-profit charitable hospitals within their provisions. In the latter case, the New York court observed,

"We believe it is not open to doubt that the Legislature did not intend the statute to be applicable to such institutions even though it did not expressly exempt them. * * * A case may be within the letter of the law, and yet not within the intent of the lawmakers; and in such a case a limitation or exception must be implied."

In the later Pennsylvania case of *Petition of Salvation Army*, 349 Pa. 105, 36 A. 2d 479, that court reiterated its position and noted that the Legislature had met twice since the first decision and had not seen fit to change the law as interpreted by the court that charitable hospitals were not included. These cases call attention to the fact that labor relations legislation is purposed to prevent imposition on labor and to assist it in bargaining with employers over the

products and profits of their labors. They point out that the charitable hospital has no such profits to bargain with; they also refer to the vital character of the service rendered by hospitals and the necessity of uninterrupted service where people's health and lives are at hazard and the dire consequences that might result if strikes or other labor disturbances occurred.

The reasoning of the cases relied upon by the defendants seems to be largely to the effect that it would have been a good idea for the Labor Relations Act to except said charitable hospitals and therefore the courts should imply such an exception.

The other line of authority was followed and is relied upon by the Utah Board; *N. L. R. B.* v. *Cent. Disp. & Emergency Hospital,* supra; *Northwestern Hospital* v. *Pub. Bldg. Service Employees' Union, Local No. 113,* 208 Minn. 389, 294 N. W. 215; *Wis. Emp. Rel. Bd.* v. *Evangelical Deaconess Society,* 242 Wis. 78, 7 N. W. 2d 590.

These cases point out that the purpose of the act and the function of the Labor Board is to minimize strikes and strife in labor relations; that for the hospital not to be subject to control would give no assurance that there would be no strike or other labor disturbance. The court in the Wisconsin case just referred to says in substance that the principal purpose of the act is to safeguard the interest of the three groups concerned with labor relations, that is, the public, the employer, and the employee; that instead of promoting strikes the real purpose of the act is to provide new methods of peacefully settling disputes which may arise and thus prevent strikes, and that there can be no greater hazard to the lives of patients in the hospital under the statute than there was before its enactment. Labor and sweat, hours, wages, and the desire to be important as individuals are much the same whether they exist in a charitable hospital or an industrial plant. There seems to be no reason why the position and rights of

workers in a hospital are not just as important to the well being of the whole community as those of any other employees.

In the *Northwestern Hospital* case, supra, the Minnesota court said:

"The Labor Relations Act does not make the right to bargain collectively dependent upon the nature of the employer's operations. * * * Since the legislature specified certain exemptions, the most practical inference is that all intended were mentioned. Inasmuch as hospitals and hospital employes were not specifically excluded, they must be regarded as within the definitions." [208 Minn. 389, 294 N. W. 218.]

With this thought, we are in accord. The Utah act also contains some exceptions but the Legislature did not see fit to except charitable hospitals. We therefore assume they were intended to be covered.

The Court of Appeals of the District of Columbia in the case of *N. L. R. B.* v. *Central Dispensary, etc.*, supra, stated, "We are unable to follow the reasoning of the Pennsylvania court" and adopted the views of the Minnesota and Wisconsin Supreme Courts as set forth in the cases heretofore cited. The Supreme Court of the United States denied certiorari, 324 U. S. 847, 65 S. Ct. 684, 89 L. Ed. 1408. We believe that this line of authority relied upon by the Utah Board is sound and accordingly follow it.

The order of the Board is affirmed. Costs to plaintiff.

WOLFE, C. J., and WADE, and McDONOUGH, JJ., concur.

HENRIOD, J., not participating.