## STATE EX REL. INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 34, AFL-CIO, v. VERN BUCK, DIRECTOR OF BUREAU OF MEDIATION SERVICES, AND OTHERS.

184 N. W. (2d) 805.

March 12, 1971—No. 42598.

*Sigal & Savelkoul* and *Samuel I. Sigal,* for appellant.
*Warren Spannaus,* Attorney General, and *Thomas B. Sedgwick,* Special Assistant Attorney General, for respondent director.

*Felhaber, Larson, Fenlon & Vogt, Thomas M. Vogt,* and *Charles F. Bisanz,* for respondent hospital association.

MURPHY, JUSTICE.

Relator, International Union of Operating Engineers, Local 34, AFL-CIO, sought review by certiorari in the district court of orders of respondent Vern Buck, as director of the Bureau of Mediation Services of the State of Minnesota, terminating the services of relator union as the bargaining agent for certain employees of Mount Sinai Hospital, Fairview Hospital, and Fairview-Southdale Hospital in proceedings submitted to arbitration pursuant to Minn. St. 179.35 to 179.39. Relator contends that the director was without authority to divest the union of its status as bargaining agent while arbitration was pending. The district court held otherwise, and relator appeals.

It appears from the record that relator union has for some years past represented employees of various Minneapolis hospitals in collective bargaining proceedings.[1] In prior negotiations the union was certified by the director of the Bureau of Mediation Services as the sole bargaining representative of the operating and maintenance engineers employed by such hospitals, all on a separate and individual hospital basis. In practice, the employer hospitals have been represented in such proceedings by the Twin City Hospital Association. This association represents the member hospitals in bargaining with the union and makes recommendations to its several members. When an agreement is reached, each individual hospital executes a separate agreement with the union. The association itself has no authority to agree to the terms of any contract proposal of the union nor can it impose any sanction on a non-agreeing member hospital.

---

[1] These hospitals include Mount Sinai Hospital, Fairview Hospital, Fairview-Southdale Hospital, Abbott Hospital, Kenny Rehabilitation Institute, Lutheran Deaconess Hospital, Methodist Hospital, North Memorial Hospital, Northwestern Hospital, St. Barnabas Hospital, St. Mary's Hospital, and Swedish Hospital.

More particularly, it appears that on September 1, 1966, the union and various hospitals entered into separate and identical contracts covering each hospital's operating and maintenance engineers. On December 12, 1968, pursuant to the terms of this contract, the union served written notice to the association and to the member hospitals individually of its intention to reopen the contract for amendments. Negotiations for a new agreement were then commenced. On April 8, 1969, the association filed with the director of the Bureau of Mediation Services a petition for conciliation on behalf of the member hospitals. On July 22, 1969, because the parties were unable to reach an agreement, the matter was submitted to binding arbitration pursuant to Minn. St. 179.38. During October 1969, some employees of Fairview Hospital, Fairview-Southdale Hospital, Mount Sinai Hospital, Methodist Hospital, and St. Mary's Hospital filed petitions with the Bureau of Mediation Services, requesting that relator union be decertified as their bargaining agent. Respondent Thomas E. Sand represented some of the employees of Fairview Hospital and Fairview-Southdale Hospital, and respondent Alfred W. Anderson represented some of the employees of Mount Sinai Hospital in this matter.

The union objected to the petitions for decertification and to any election which might be held for that purpose. The director of the Bureau of Mediation Services nevertheless held hearings on the petitions. As a result of these hearings, elections were conducted at the various hospitals to determine whether the employees wanted the union to continue as their representative. The union lost the elections at Fairview Hospital, Fairview-Southdale Hospital, and Mount Sinai Hospital. Based on these elections, the director certified on March 3, 1970, that the union was not the representative of the operating and maintenance engineers of those three hospitals. The district court affirmed the action of the director.

■ As in the court below, relator contends that the director was without authority to make and enter orders terminating the

union's authority to act in behalf of the union employees of the three hospitals. Relator points to §§ 179.36, 179.37, and 179.38, which prohibit strikes and lockouts and make arbitration mandatory in labor disputes in which hospital employees are involved, and argues that because of the compulsory nature of these statutory proceedings public policy requires that, in the interests of union membership and the interrelationship of the employer group, a change in the employees' certified bargaining agent should not be made once arbitration proceedings have been instituted. It is argued that to permit this to happen will defeat the policy of the state in favor of arbitration, frustrate negotiations, and invite raiding of membership.[2]

The statute under which the director of the Bureau of Mediation Services acted (§ 179.16, subd. 2) provides that when a question concerning representation in labor negotiations is raised by a group of employees, the director shall, at the request of the parties, "investigate such controversy and certify to the parties in writing, the name or names of the representatives that have been designated or selected." While decertification proceedings are not specifically provided for and the precise issue has never been before this court, it must be conceded that the director is clearly authorized to designate a representative for collective bargaining purposes pursuant to § 179.16, subd. 2.[3]

---

[2] Relator also refers to Minn. St. 179.40 in support of its argument that such practice violates public policy. That section of the statute, however, refers to public policy as it relates to secondary boycotts and other coercive practices. We do not find anything in the record which would make the provisions of that statute applicable, nor does the record contain evidence of unlawful acts or unfair labor practices which might invoke the provisions of § 179.42.

[3] Minn. St. 179.16, subd. 2, provides: "When a question concerning the representative of employees is raised by an employee, group of employees, labor organization, or employer the director of mediation services or any person designated by him shall, at the request of any of the parties, investigate such controversy and certify to the parties in writing, the name or names of the representatives that have been desig-

Here, a question was raised concerning the representation of the employees, and the director acted upon a proper request of the parties to investigate the controversy out of which such question arose. It is not contended that the director did not have jurisdiction to proceed as he did. There was a genuine controversy as to who should represent the employees in negotiations with the employer. We are not presented here with a situation where the statutory authority of the director is limited to affirmative certification and does not permit him to issue a negative certificate. In re G. C. Murphy Co. 51 Pa. D. & C. 535; Koehler's Petition, 92 Pittsburgh Leg. J. 587. It is well recognized that the director, in determining and certifying representatives for collective bargaining purposes, is not confined to the powers specifically conferred by statute, and that his duties include all those which are fairly within its scope and which are essential to the accomplishment of the main purpose for which the office was

---

nated or selected. The director shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining and otherwise to effectuate the purpose of this chapter, the unit appropriate for the purpose of collective bargaining shall be the employer unit, craft unit, plant unit; provided, that any larger unit may be decided upon with the consent of all employers involved, and provided that when a craft exists, composed of one or more employees then such craft shall constitute a unit appropriate for the purpose of collective bargaining for such employee or employees belonging to such craft and a majority of such employees of such craft may designate a representative for such unit. Two or more units may, by voluntary consent, bargain through the same agent or agents with an employer or employers, their agent or agents. Supervisory employees shall not be considered in the selection of a bargaining agent. In any such investigation, the director may provide for an appropriate hearing, and may take a secret ballot of employees or utilize any other suitable method to ascertain such representatives, but the director shall not certify any labor organization which is dominated, controlled, or maintained by an employer. If the director has certified the representatives as herein provided, he shall not be required to again consider the matter for a period of one year unless it appears to him that sufficient reason exists."

created, as well as those which, although incidental and collateral, are germane to or serve to promote or benefit the accomplishment of the principal purposes. State ex rel. Dison v. Hanson, 248 Minn. 87, 78 N. W. (2d) 679; International Bro. of Team. v. Brotherhood of Rail. A. & S. Clerks, 131 App. D. C. 55, 402 F. (2d) 196, certiorari denied, 393 U. S. 848, 89 S. Ct. 135, 21 L. ed. (2d) 119; 51 C. J. S., Labor Relations, § 163.

■ While we might well agree that there should be a greater measure of stability and permanence in the status of a bargaining representative, we find nothing in the statute or authorities which requires or suggests that employees must be represented in labor negotiations by an agent they do not want. To so hold, we would have to supply an additional provision to statutes governing wage negotiations. Minn. St. 179.35 to 179.39. Relator would have us hold that once arbitration proceedings are pending, an employee group cannot terminate the services of its representative at the bargaining table. It is for the legislature to make that decision and not for the courts. Moreover, there is strong public policy favoring the free choice of a bargaining agent by employees, and courts should not interfere with that policy unless extraordinary circumstances intervene, which is not the case here. Schmerler Ford, Inc. v. N. L. R. B. (7 Cir.) 424 F. (2d) 1335; N. L. R. B. v. David Buttrick Co. (1 Cir.) 399 F. (2d) 505; Local 57, I. L. G. W. U. v. N. L. R. B. 126 App. D. C. 81, 374 F. (2d) 295, certiorari denied, 387 U. S 942, 87 S. Ct. 2074, 2078, 18 L. ed. (2d) 1328; Retail Clerks Union, Local 770 v. N. L. R. B. (9 Cir.) 370 F. (2d) 205; Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. (2d) 815; Mueller v. Chicago & N. W. Ry. Co. 194 Minn 83, 259 N. W. 798; 56 C. J. S., Master and Servant, § 28 (36)a; 3 Am. Jur. (2d) Agency, § 37.

■ It is next contended by relator that there was an existing contract between the parties which barred the actions seeking termination of relator's representation. In answer to this argument, it may be briefly observed that the contract carried an expiration clause which was exercised by the union and, at the time

of the proceedings before the Bureau of Mediation Services, a renewal of that agreement with the employer had not been reached. We agree with the director that the proceedings to decertify were just as appropriate and as timely then as they would have been had the request for decertification been made at the time the original agreement expired. Amalgamated Food Handlers, Local 653-A, 244 Minn. 279, 70 N. W. (2d) 267.

■ It is also contended by relator that its representation of the employee units could not be terminated or interfered with because it was acting as a representative in negotiations with the Minneapolis charitable hospitals as a multi-employer unit, as comprehended by certain provisions in § 179.16, subd. 2.[4] Part of the statute to which relator refers has to do with negotiations between two or more units who may voluntarily consent to "bargain through the same agent or agents with an employer or employers, their agent or agents." It is clear from the record that there was no multi-employer unit within the purview of § 179.16, subd. 2. As has been already noted, the evidence establishes that the employer hospitals acted on an individual basis and were either voluntarily recognized or certified by the director at various times on an individual basis and that the negotiations over many years have been carried on through and by a committee elected by the hospital administrators. In his findings and summary, the director stated:

"* * * In most cases, the hospitals have been represented by the Twin City Hospital Association and by various attorneys, but at no time have the hospitals agreed to be bound by the outcome of such negotiations and have only used this procedure for expediency to themselves and the union. The union at all times has been free to demand individual negotiations and at times have petitioned for recognition of an individual hospital maintaining that the individual hospital was an appropriate unit. Therefore, it is hard to conceive that the same union can in one

---

[4] See footnote 3, *supra*.

case maintain that an individual hospital is an appropriate unit for the purposes of representation when they are petitioning, and then maintain that an individual hospital is an improper unit when the employees request a determination."

While it may be conceded, as the lower court stated, "a withdrawal of an employee group during the period of labor negotiations can be frustrating and can impede the dealings of the groups that have not withdrawn," it must also be acknowledged that the union has shown no contractual or statutory prohibition preventing the dissatisfied employees from rejecting their bargaining representatives.

The other points raised in the briefs have either been withdrawn or are without sufficient substance to require discussion.

Affirmed.

MR. CHIEF JUSTICE KNUTSON and MR. JUSTICE PETERSON took no part in the consideration or decision of this case.