**HILL–MURRAY FEDERATION OF TEACHERS, ST. PAUL, Minnesota, Respondents,**

v.

**HILL–MURRAY HIGH SCHOOL, MAPLEWOOD, Minnesota, Relator.**

**No. C3–90–2617.**

Court of Appeals of Minnesota.

June 4, 1991.

Review Granted Aug. 29, 1991.

---

Roger A. Peterson, Ronald G. Marks, Peterson, Engberg & Peterson, Minneapolis, for respondents.

Paul J. Zech, Charles F. Bisanz, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Andrea Mitau–Kircher, Sp. Asst. Atty. Gen., St. Paul, for State of Minnesota.

Considered and decided by POPOVICH *, P.J., and KALITOWSKI and SHORT, JJ.

## OPINION

SHORT, Judge.

Hill–Murray High School appeals from a decision of the Bureau of Mediation Services (BMS) certifying a teachers' union as the exclusive bargaining unit at the church-operated school. Hill–Murray challenges the application of the Minnesota Labor Relations Act, Minn.Stat. §§ 179.01–.17 (1990), to its operations under the religion clauses of the state and federal constitutions. In the alternative, Hill–Murray challenges the exclusion of certain teachers from the proposed bargaining unit. We reverse the BMS' decision on constitutional grounds, and therefore do not address the unit exclusion issues.

## FACTS

Hill–Murray High School[1] is a coeducational Catholic high school which operates under the authority and supervision of a local church organization. As part of its supervisory function, the local church organization maintains a grievance policy for all of its employees, including employees of Hill–Murray. The highest ranking local church official, the Archbishop, exercises ultimate control over the school.

---

* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

1. Hill–Murray High School was created by a merger between Archbishop Murray High School and Hill High School in 1971.

Hill–Murray exists to advance the educational mission of the Catholic church and to propagate its religious beliefs in the next generation. Thus, it requires religious indoctrination of all students, regardless of faith. Both teachers and students are expected to attend church services and other liturgical functions. In addition, all Hill–Murray teachers are required to support publicly the teachings of the Catholic church. While Hill–Murray does not require its teachers to be Catholic, the school would not hire an individual who was unwilling to promote the teachings of the church. Over 80 percent of the teachers currently at Hill–Murray are Catholic.

The religious character of the school is evidenced by the daily prayer in all classrooms, the presence of religious symbols throughout the school, and the observation of Catholic religious holidays during the school year. All students must take a religion class every trimester throughout their attendance at Hill–Murray. The administration reviews outside speakers and resource materials to assure harmony with Catholic doctrine and policy.

The Hill–Murray Federation of Teachers (Federation) is a local union affiliated with the Minnesota Federation of Teachers, the American Federation of Teachers, and the AFL–CIO. The Federation petitioned the BMS to determine whether the teachers at Hill–Murray High School wished to be represented by a union. When the BMS took steps to determine an appropriate bargaining unit, Hill–Murray objected to the BMS' assertion of jurisdiction over the school. Hill–Murray brought a motion to dismiss the representation petition on the grounds that application of the Minnesota Labor Relations Act (MLRA) to its operations would violate the religion clauses of the state and federal constitutions.

The BMS denied Hill–Murray's motion to dismiss and concluded the MLRA authorized the determination of an appropriate bargaining unit at Hill–Murray. The BMS conducted further hearings and issued an order describing an appropriate bargaining unit. Consistent with this unit determination order, the BMS directed the parties to hold an on-site election to determine whether a majority of the faculty wished to be represented by the Federation for collective bargaining purposes. Hill–Murray promptly appealed to this court for a stay of the union election. After we denied Hill–Murray's motion to stay the election, eighteen of the twenty-seven eligible teachers chose to be represented by the Federation. Shortly thereafter, this court dismissed Hill–Murray's appeal as premature and remanded the matter for unit certification. However, we stayed Hill–Murray's duty to bargain pending any appeal from a final certification order.

Upon remand, the BMS certified the Federation as the exclusive bargaining representative. Hill–Murray then appealed under Minn.R.Civ.App.P. 118, but the supreme court denied the petition for accelerated review. The case is now before this court on a writ of certiorari.

## ISSUES

I. Does the application of the Minnesota Labor Relations Act to a church-operated school violate the religious protections afforded by article I, section 16, of the Minnesota Constitution?

II. Does the application of the Minnesota Labor Relations Act to a church-operated school violate the religion clauses of the first amendment to the United States Constitution?

## ANALYSIS

The standard of review upon writ of certiorari is whether the administrative body exceeded its jurisdiction, proceeded on an erroneous theory of law, or acted arbitrarily, oppressively, and unreasonably. *Haaland v. Pomush,* 263 Minn. 506, 510, 117 N.W.2d 194, 197 (1962). We must uphold the agency's findings if they are supported by substantial evidence in the record. *State by McClure v. Sports and Health Club, Inc.,* 370 N.W.2d 844, 848 (Minn.1985). When reviewing questions of law, however, we are not bound by the agency's decision, and need not defer to its expertise. *Id.* at 854 n. 17. The BMS

properly declined to decide the constitutional issues involved in this case.

The primary question presented on appeal is whether the state can apply the MLRA to a church-operated high school. Hill–Murray objected to the BMS' exercise of jurisdiction on the grounds that it violates (1) the freedom of conscience rights guaranteed by the Minnesota Constitution, and (2) the establishment and free exercise clauses of the United States Constitution. The MLRA defines "employer" broadly, but its legislative history is silent on whether the Act applies to church-operated schools. *See* Minn.Stat. § 179.01, subds. 3, 4 (1990) (definitions of "employer" and "employee"). The MLRA thus applies to Hill–Murray unless a constitutional limitation prevents such application.

## I.

■ Hill–Murray argues the assertion of jurisdiction by the BMS violates rights protected by article I, section 16, of the Minnesota Constitution. Section 16 provides in part:

> The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own conscience shall never be infringed; * * * nor shall any control of or interference with the rights of conscience be permitted.

Minn. Const. art. I, § 16. This language is broader and more emphatic than the religion clauses of the first amendment to the United States Constitution. *State v. Hershberger*, 462 N.W.2d 393, 397 (Minn. 1990). While the first amendment limits government action at the point of prohibiting the exercise of religion, section 16 precludes even an infringement on or interference with religious freedom. *Id.* Section 16 also limits the governmental interests that may outweigh religious liberty. *Id.* To excuse an imposition on religious freedom under the Minnesota Constitution, the government's interest must be one of peace or safety or an interest against acts of licentiousness. Minn. Const. art. I, § 16.

Only religious practices that are licentious or inconsistent with peace or safety are denied an exemption. *State by Cooper v. French*, 460 N.W.2d 2, 9 (Minn.1990).

■ The liberty of conscience clause in the state constitution is both "an enumeration of a primordial right and a limitation on the power of the state." *Hershberger*, 462 N.W.2d at 400 (Simonett, J., concurring). When analyzing a claim under this clause, the burden of persuasion is on the state to demonstrate that public peace or safety cannot be achieved through reasonable alternative means. *See id.* at 399. Merely articulating that public peace is a competing interest is not enough. *See id.*

■ The state and the Federation argue Hill–Murray has failed to identify a religious belief that is protected by article I, section 16. We disagree. Historically, churches and synagogues have founded alternative school systems for essentially religious reasons and have continued to maintain them as an integral part of their religious mission. *See Lemon v. Kurtzman*, 403 U.S. 602, 616, 91 S.Ct. 2105, 2113, 29 L.Ed.2d 745 (1971). Church schools engage in substantive religious activity and purpose. *See, e.g.,* Giannella, *Religious Liberty, Nonestablishment, and Doctrinal Development: Part II. The Nonestablishment Principle*, 81 Harv.L.Rev. 513, 573–74 (1968). The fact that Hill–Murray provides secular as well as religious education does not detract from its religious mission. Sectarian instruction takes place in secular courses; everything is taught at a church school with the ultimate goal of religious education. Thus, teaching religious beliefs to children is an aspect of the exercise of religious freedom protected by the Minnesota Constitution.

While courts have routinely applied local regulations which require fire inspections or state laws mandating attendance to church-sponsored schools, those laws are readily distinguishable from the MLRA because they do not have a clear inhibiting potential upon the relationship between teachers and church employers. *See NLRB v. Catholic Bishop*, 440 U.S. 490, 496, 99 S.Ct. 1313, 1317, 59 L.Ed.2d 533

(1979). The bargaining relationship imposed by the MLRA would require the local church official to share decision-making authority for the operation and direction of Hill–Murray with union officials.

The Federation and the state also argue imposition of the MLRA on Hill–Murray is justified by a compelling government interest in achieving institutional peace. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 42, 57 S.Ct. 615, 626, 81 L.Ed. 893 (1937) (recognizing that "collective bargaining is often an essential condition of industrial peace"); *State ex rel. Int'l Union of Operating Eng'rs, Local 34 v. Buck*, 289 Minn. 469, 475, 184 N.W.2d 805, 810 (1971) ("there is strong public policy favoring the free choice of a bargaining agent by employees, and courts should not interfere with that policy unless extraordinary circumstances intervene"). However, the state has failed to demonstrate institutional peace cannot be achieved through reasonable alternative means. *Cf. Hershberger*, 462 N.W.2d at 399.

Hill–Murray has established grievance procedures, and bargains with its teachers in voluntary contract negotiations. These appear to provide an alternative that achieves both of the important values embodied in section 16: freedom of conscience and institutional peace. The Hill–Murray teachers' apparent dissatisfaction with this approach and the lack of an enforcement mechanism do not, without more, demonstrate inability to achieve institutional peace through the alternative means employed by Hill–Murray. Consequently, article I, section 16, prohibits the BMS from applying the MLRA to Hill–Murray.

## II.

We turn next to the federal constitutional issues. Hill–Murray argues application of the MLRA to it violates the establishment and free exercise clauses of the federal Constitution. These clauses apply to the states by virtue of the fourteenth amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

### A. Establishment Clause

■ Congress can make no law "respecting an establishment of religion." U.S. Const. amend. I. Although the Supreme Court generally has construed the establishment clause in the context of governmental action that benefits a religious activity, *see, e.g., Lemon*, 403 U.S. at 625, 91 S.Ct. at 2117, it is now clear the establishment clause is implicated by a statute that potentially burdens religious activities. *See Lynch v. Donnelly*, 465 U.S. 668, 673, 104 S.Ct. 1355, 1359, 79 L.Ed.2d 604 (1984) (establishment clause forbids hostility toward any religion); *Catholic Bishop*, 440 U.S. at 501–04, 99 S.Ct. at 1319–20 (conflicts flowing from NLRB jurisdiction over church-operated schools implicate Constitution's religion clauses); *Dayton Christian Schools, Inc. v. Ohio Civil Rights Comm'n*, 766 F.2d 932, 956 (6th Cir.1985) (establishment clause implicated by statute burdening religion), *rev'd on other grounds*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); Ripple, *The Entanglement Test of the Religion Clauses—A Ten Year Assessment*, 27 UCLA L.Rev. 1195, 1214 (1980) (establishment clause analysis often used in traditional free exercise cases). *But see* Laycock, *Towards a General Theory of Religion Clauses: The Case of Church Labor Relations and the Right to Church Autonomy*, 81 Colum.L.Rev. 1373, 1416–17 (1981) (burdens on religion do not implicate the establishment clause).

■ The three-prong test employed in *Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111, to determine whether government entanglement is excessive applies with equal force to such cases. To pass constitutional muster, a statute must (a) have a secular legislative purpose, (b) have a principal or primary effect that neither advances nor inhibits religion, and (c) not foster excessive government entanglement with religion. *Id.* This is not a rigid "test," but rather a flexible analytical framework which emphasizes the objectives of the establishment clause. *See Dayton Christian Schools*, 766 F.2d at 945 & n. 22, 956 & n. 42. Moreover, when assessing a claim to

religious freedom under the first amendment, the state has the burden of showing its regulatory scheme will not lead to excessive government entanglement with religion. *See Surinach v. Pesquera de Busquets*, 604 F.2d 73, 75–76 (1st Cir.1979).

It is undisputed the MLRA has a secular legislative purpose, and does not inhibit or advance religion as its primary effect. The only issue is whether the MLRA fosters an excessive government entanglement with religion. *See generally*, Ripple, 27 UCLA L.Rev. at 1196–1208 (discussing application of entanglement analysis). "Entanglement is a question of kind and degree." *Lynch*, 465 U.S. at 684, 104 S.Ct. at 1365. In assessing entanglement claims, we consider (1) the character of the institution affected, (2) the type of burden placed upon that institution, and (3) the resulting church-state relationship. *Lemon*, 403 U.S. at 615, 91 S.Ct. at 2112.

First, as we have discussed fully above, Hill–Murray is a religious school. *See id.* at 616–18, 91 S.Ct. at 2113–14. Second, the state seeks to regulate the "ideological resources" of the school through collective bargaining under the MLRA. *See Tilton v. Richardson*, 403 U.S. 672, 687–88, 91 S.Ct. 2091, 2100, 29 L.Ed.2d 790 (1971). The MLRA makes "rates of pay, wages, hours of employment, or other conditions of employment" subject to collective bargaining. Minn. Stat. § 179.16, subd. 1. The phrase "conditions of employment" is arguably so broad as to cover nearly every activity at Hill–Murray that affects teachers. *See Catholic Bishop*, 440 U.S. at 502–03, 99 S.Ct. at 1320. It is likely the BMS will be asked to resolve disputes ranging from philosophical topics such as academic freedom, to practical topics such as teacher evaluation and termination. These subjects at a church school are inextricably linked to doctrine, religious mission, and the exercise of control by the church. The presentation of a doctrinal issue in an unfair labor practice case would subject the religious practice to explanation and analysis, and probably to verification and justification, contrary to the establishment clause. *See Catholic*

*Bishop v. NLRB*, 559 F.2d 1112, 1129 (7th Cir.1977), *aff'd on other grounds*, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979). While it is possible that some cases would involve no religious issues, the potential clearly exists.

The third factor of the *Lemon* entanglement analysis addresses the church-state relationship resulting from the BMS' assertion of jurisdiction over Hill–Murray. As described above, allowing the BMS to exercise jurisdiction over Hill–Murray will result in comprehensive and continuing state surveillance, rather than a single church-state encounter. *See Tilton*, 403 U.S. at 688, 91 S.Ct. at 2100. Thus, we conclude under the *Lemon* analysis that there is excessive government entanglement with religion. In light of the religious educational purpose of Hill–Murray and the critical role of its teachers in accomplishing that purpose, the BMS' exercise of jurisdiction over Hill–Murray would foster excessive entanglement in violation of the establishment clause. *See Catholic Bishop*, 559 F.2d at 1130 (NLRB could not exercise jurisdiction over Catholic secondary schools); *McCormick v. Hirsch*, 460 F.Supp. 1337, 1340 (M.D.Pa.1978) (NLRB enjoined from asserting jurisdiction over a Catholic parochial high school); *Caulfield v. Hirsch*, 95 L.R.R.M. (BNA) 3164, 3180 (E.D.Pa.1977) (NLRB enjoined from asserting jurisdiction over Catholic elementary schools); *see also Little v. Wuerl*, 929 F.2d 944, 949, 951 (3d Cir.1991) (interpreting Title VII's religious exemption broadly and refusing to apply the Act to a Catholic school because it would implicate the entanglement concerns of the establishment clause); *Dayton Christian Schools*, 766 F.2d at 961 (Ohio Civil Rights Commission could not exercise jurisdiction over a religious school and its hiring practices because it would result in excessive government entanglement with religion).

The state asserts this case is premature, arguing the potential for entanglement is too speculative. We disagree. In *Lemon*, the Supreme Court addressed prospective circumstances involving aid-to-parochial-school statutes. 403 U.S. at 620, 91

S.Ct. at 2115. State aid to nonpublic schools "is a relationship pregnant with dangers of excessive government direction of church schools and hence of churches." *Id.*, 91 S.Ct. at 2115. In this case, the "pregnancy" has come to term. Entanglement began with certification and there is a reasonable likelihood of further entanglement. *See Catholic Bishop,* 559 F.2d at 1126. The threshold act of union certification alters and impinges upon the religious character of Hill–Murray because the church is no longer the sole arbiter of religious issues. *See id.* at 1123. The likelihood of further entanglement supports judicial resolution before further injury to Hill–Murray.

At least one other jurisdiction has approached the entanglement issue differently than we do. In considering whether the religion clauses prohibited the New York State Labor Relations Board from exercising jurisdiction over parochial schools, the Court of Appeals for the Second Circuit reached the opposite result. *See Catholic High School Ass'n v. Culvert,* 753 F.2d 1161, 1169 (2d Cir.1985). In order to avoid excessive entanglement, the *Culvert* court ruled the first amendment "prohibits the State Board from inquiring into an asserted religious motive to determine whether it is pretextual." *Id.* at 1168. We do not believe the prohibition against entanglement is as narrow as the Second Circuit suggests. The entanglement in Hill–Murray's case is not a peripheral threat that can be dismissed by procedural mechanisms to shift burdens. The BMS' attempt to avoid entanglement by excluding religion and music teachers from the bargaining unit similarly fails. First amendment guarantees would be improperly diluted by classifying teachers and selectively applying the MLRA to one group and not to another, virtually identical group. Even if this procedure were used, the likelihood of entanglement remains.

### B. Free Exercise Clause

■■■ The first amendment to the United States Constitution also prohibits Congress from interfering with the free exercise of religion. U.S. Const. amend. I.

The right to believe as one wishes and to practice that belief according to the dictates of conscience, without violating the personal rights of others, is fundamental to our system. *See Sherbert v. Verner,* 374 U.S. 398, 402–03, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963). This basic freedom is guaranteed not only to individuals, but also to churches. Churches have the power to decide matters of faith, doctrine, and even internal governance free from state interference. *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952). However, a law of general application that is not intended to regulate religious beliefs or conduct does not contravene the free exercise clause if it incidentally infringes on religious practices. *Employment Div., Dep't of Human Resources v. Smith,* — U.S. —, —, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876 (1990).

Hill–Murray argues the imposition of mandatory bargaining would also infringe on its right to free exercise of religion. The MLRA is a law of general applicability which regulates neither religious beliefs nor conduct. Nevertheless, we conclude the application of the MLRA to Hill–Murray more than incidentally infringes on religious practices.

■■■ Religious organizations have an interest in autonomy over their internal affairs, including the freedom to resolve their own disputes and run their own institutions. *Corporation of the Presiding Bishop v. Amos,* 483 U.S. 327, 341, 107 S.Ct. 2862, 2871, 97 L.Ed.2d 273 (1987) (Brennan, J., concurring in the judgment). The Supreme Court has consistently extended churches' rights of autonomy as far as necessary to include the cases before it. Laycock, *supra* p. 10, at 1397. *But cf. Smith,* — U.S. at —, 110 S.Ct. at 1606 (free exercise clause does not protect an individual's sacramental peyote use). This constitutionally protected right of autonomy logically extends to all aspects of church operation, including the operation of religious schools. Labor relations in church schools are matters of church administration which affect the operation of the church. *See* Laycock, *supra,* at 1388–

1402; *Catholic Bishop,* 559 F.2d at 1124 (employer who must honor a bargaining order is substantially inhibited in its manner of conducting business). Consequently, application of the MLRA to Hill–Murray would significantly infringe on church autonomy and interfere with church control of that institution.

Unlike the facts before the Court in *Smith,* there is no violation of a criminal statute at issue in this case. In *Smith,* the Court noted at the beginning and twice in its analysis the significance of the fact that the conduct infringed was prohibited by law. *Smith,* —— U.S. at ——, 110 S.Ct. at 1598–99, 1603. Our decision here does not permit an individual "to become a law unto himself" or confer "a private right to ignore generally applicable laws." *Id.* at ——, 110 S.Ct. at 1603–04 (citation omitted). Under these circumstances, we conclude application of the MLRA to Hill–Murray also conflicts with the free exercise clause of the federal Constitution.

### DECISION

The Minnesota and federal Constitutions prevent the state from applying the MLRA to the relationship between a church-operated high school and its teachers. The state has failed to demonstrate institutional peace cannot be achieved through reasonable alternative means. In addition, the BMS' exercise of jurisdiction over Hill–Murray fosters an excessive government entanglement with religion and significantly infringes on religious practices.

Reversed.